O

# United States District Court
# Central District of California

| | |
|---|---|
| KAWASKI CORLEY, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDEX GROUND PACKAGE SYSTEM INC., et al.,<br><br>        Defendants. | Case No. 5:19-cv-00429-ODW(SHKx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FEDEX'S MOTION FOR PARTIAL SUMMARY JUDGMENT [23]** |

## I.    INTRODUCTION

This matter comes before the Court on Defendant FedEx Ground Package System Inc.'s Motion for Partial Summary Judgment, (ECF No. 23). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** FedEx's Motion.[1]

## II.    BACKGROUND

FedEx is a licensed motor carrier that provides package transportation and delivery services throughout the United States. (Def.'s Resp. to Pl.'s Additional

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Material Facts ("SUF II") 2, ECF No. 26.)  Kawaski Corley worked as a linehaul truck driver for FedEx from approximately 2005 to 2017. (SUF II 4.)

On November 7, 2005, the Parties entered into a Linehaul Contractor Operating Agreement ("Operating Agreement").  (Def.'s Statement of Uncontroverted Facts ("SUF") 1, ECF No. 23-2.)  On May 3, 2011, the Parties amended the Operating Agreement to substitute K Corley Trucking Inc. ("KCT") as the contracting entity. (SUF 2.)  On August 24, 2016, KCT and FedEx once again amended the Operating Agreement with Addendum 23, which had an effective date of August 29, 2016. (SUF 4.)  Addendum 23 includes a class action waiver and a one-year limitations period for all claims.  (SUF 8–12.)  The last time KCT received any settlement compensation from FedEx was August 18, 2017. (SUF 5.)

On January 9, 2019, Corley filed a class action against FedEx in the Superior Court of California for the County of San Bernardino.  (SUF 6.)  Corley alleges ten causes of action, including: (1) declaratory relief; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal breaks; (5) failure to provide rest breaks; (6) failure to reimburse for necessary business expenses; (7) failure to provide adequate wage statements; (8) unlawful deductions from wages; (9) unfair competition; and (10) quantum merit/unjust enrichment.  (*See generally* Compl., ECF No. 1-1)  Corley seeks to represent a class of "[a]ll persons who at any time [up to four years prior to the date of filing and continuing until the date of final judgment]: (1) were designated by Defendants as independent contractors; and (2) who performed work for Defendants as linehaul truck drivers in the State [of] California." (*See* Compl. ¶¶ 18–19.)  On March 8, 2019, FedEx removed the action to federal court pursuant to 28 U.S.C. sections 1332, 1441, and 1446.  (Notice of Removal, ECF No. 1.)

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id*. "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotation marks omitted). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

FedEx moves for partial summary judgment for two main reasons: First, FedEx argues that Addendum 23 bars all individual claims for alleged violations on or after August 29, 2016. (Mot. 3.) Second, FedEx seeks to define the appropriate subject period for Corley's allegations. The Court will consider each issue in turn.

### A. Applicability of Addendum 23

The threshold issue to the Parties' dispute is the applicability of Addendum 23. Corley argues against application, noting that he was not a party to Addendum 23 because he signed it only in his capacity as an officer of KCT. (Opp'n 2.) He further contends that Addendum 23 is inapplicable because he brings his claims on behalf of himself, not KCT, and the putative class of FedEx drivers. (*See* Opp'n 3.)

FedEx's main argument in response is that Corley pleaded his claims as if he stands in the shoes of KCT. (*See* Reply 1–2.) FedEx further argues that regardless of whether Corley is a party to Addendum 23, the doctrine of equitable estoppel warrants application of the agreement's terms. (*See* Reply 4.)

To begin, FedEx urges the Court to apply Pennsylvania law to determine whether equitable estoppel applies. (*See* Mot. 3 n.2.) Corley fails to address which state law should apply to this specific question. At first glance, California's equitable estoppel law appears to favor Corley more than Pennsylvania law. *See, e.g.*, *Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1128 (N.D. Cal. 2018) (refusing to apply equitable estoppel to similar facts because the non-signatories' claims were not "dependent upon or bound up in the terms and obligations of Uber's service agreement"). Regardless, for the reasons below, FedEx's arguments fail even under Pennsylvania law.

Under Pennsylvania law, in deciding whether to enforce a contract against a non-signatory, courts must determine whether he is bound "under traditional principles of contract and agency law." *See E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d Cir. 2001)

(explaining that not even the liberal presumption in favor of arbitration is enough to bind an individual with a contract he did not sign). "[W]e must be careful about disregarding the corporate form and treating a non-signatory like a signatory." *Id.* at 201.

The doctrine of equitable estoppel "prevent[s] a non-signatory from embracing a contract, and then turning its back on the portions of the contract . . . that it finds distasteful." *Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517, 543 (M.D. Pa. 2016) (quoting *Dupont*, 269 F.3d at 200). In other words, courts frown upon non-signatories who "knowingly exploit[] the agreement containing the [undesired] clause despite having never signed the agreement." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014). This "knowingly exploits" theory applies when a non-signatory "embraces the agreement and directly benefits from it." *Id.* (internal quotation marks omitted). A non-signatory can embrace the agreement in two ways: "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." *Id.* (internal quotation marks omitted).

### 1. Whether Corley Sought and Obtained Direct Benefits From the Operating Agreement

The Court is not convinced that Corley embraced the Operating Agreement and directly benefited from it. First, far from embracing the agreement, Corley alleges that FedEx's employment practices are unlawful. (*See generally* Compl.) Perhaps for this reason, FedEx focuses more on its argument that Corley directly benefited from the agreement.

As its sole example, FedEx argues that Corley has directly benefitted from the agreement "if the settlement payments and statements issued to K Corley Trucking under the amended Operating Agreement are construed as 'paychecks' and 'wage statements' issued to Corley individually." (Reply 5.) But, under the agreement, FedEx and KCT expressly distinguished between FedEx's obligations to KCT and

KCT's obligations to its individual employees, such as Corley. (*See, e.g.*, Operating Agreement ¶ 4.2, ECF No. 23-3 ("FedEx Ground shall have no responsibility to make deductions for, or to pay wages, benefits, health, welfare and pension costs, withholding for income taxes, unemployment insurance premiums, payroll taxes, disability insurance premiums, social security taxes, or any other similar charges with respect to Contractor or Contractor's employees.").) Accordingly, whatever individual benefits that flowed to Corley were collateral and transferred at KCT's discretion as envisioned by the Operating Agreement. *See Direct*, Black's Law Dictionary (11th ed. 2019) (defining "direct" as straight, undeviating, free from extraneous influence, immediate, or "involving passing in a straight line of descent, as distinguished from a collateral line").

### 2. Whether Corley Seeks to Enforce the Terms of the Operating Agreement or is Asserting Claims Based on it

Next, FedEx argues that "Plaintiff's various allegations show that his misclassification claims presume that Corley stands in the shoes of K Corley Trucking." (Reply 2.) FedEx goes on to list several ways in which Corley's claims conflict with the contractual scheme in the Operating Agreement. (*See, e.g.*, Reply 2 (FedEx does not classify Corley as either an employee or independent contractor), 3 (FedEx does not issue paychecks or wage statements to Corley).) According to FedEx, "[t]hese allegations further demonstrate the extent to which Plaintiff relies on the terms of the Operating Agreement to assert his claims, each of which is premised on a misclassification theory." (Reply 4.)

In support of its arguments, FedEx relies on *Scottsdale Ins. Co. v. Kinsale Ins. Co.*, 253 F. Supp. 3d 796 (E.D. Pa. 2017). There, the court equitably estopped plaintiff from objecting to an arbitration clause in a contract that he did not sign. *See id.* at 803. The court found that plaintiff sought to "step into the shoes" of the contract's signatory to "exercise the rights and remedies . . . that are available to [the signatory] under the Subcontract." *Id.* at 803. The court concluded that the contract is

what provided plaintiff the remedies he sought. *Id.* ("In other words, without the Kinsale policy, there is no defense or indemnity available to [the signatory] (or [plaintiff]).").

The Court is not persuaded. Unlike the plaintiff in *Scottsdale*, Corley is not seeking to enforce the terms of the Operating Agreement or asserting his claims based on its provisions.[2] Instead, Corley brings this action in his individual capacity to enforce his employment rights under California law. It is not enough for purposes of equitable estoppel that Corley's claims might in some way relate to the terms of the Operating Agreement. *See Griswold*, 762 F.3d at 273–74 (denying equitable estoppel because "claims must be based *directly* on the agreement"); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295–96 (3d Cir. 2004) (refusing to apply equitable estoppel where non-signatory was "one step removed" from the agreement even though the dispute was "closely intertwined" with that agreement). The fact that Corley's claims in this case happen to repudiate the Operating Agreement's legality further reinforces the Court's conclusion.

For these reasons, the Court finds that Addendum 23 does not prevent Corley from asserting his claims as he has done in the Complaint.[3]

**B.     Applicable Subject Period**

FedEx's limitations period arguments fall into two separate categories. First, FedEx argues that California's statutes of limitations apply to all claims arising prior to the effective date of Addendum 23, August 29, 2016. (*See* Mot. 6–7.) Second, FedEx claims that all claims arising on or after August 29, 2016 are governed by

---

[2] The other cases that FedEx cites in support of its equitable estoppel theory are also distinguishable. *See Camp Ne'er*, 185 F. Supp. 3d at 543 (applying equitable estoppel because plaintiff alleged that the contract's provisions were violated); *Confer v. Exco Res., L.L.C.*, No. CV 13-2178, 2013 WL 12203016, at *8 (M.D. Pa. Nov. 19, 2013) (not an equitable estoppel case); *US Airways, Inc. v. Elliott Equip. Co.*, No. CV 06-1481, 2008 WL 4461847, at *4 (E.D. Pa. Sept. 29, 2008) (same).

[3] Because the Court rejects FedEx's equitable estoppel argument, its only argument as to the application of Addendum 23, the Court need not address Corley's other arguments against the Operating Agreement's terms. (*See* Opp'n 5–20.)

Addendum 23's one-year limitations periods. (*See* Mot. 7–9.)

FedEx argues that the standard governing the application of Addendum 23's class waiver, equitable estoppel, also applies to the contractual question concerning the one-year statute of limitations. (Reply 5.) Having found that equitable estoppel does not make Addendum 23 binding on Corley, its one-year statute of limitations is also inapplicable.

"A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Thus, the Court applies California's statutes of limitations to Corley's claims.

The applicable statute of limitations for Corley's first eight causes of actions is three years. *See* Cal. Civ. Proc. Code § 338(a) (statute of limitations for statutory claims); *Snyder v. Cal. Ins. Guarantee Ass'n*, 229 Cal. App. 4th 1196, 1208 (2014) ("The duration of the limitations period applicable to a declaratory relief action is determined by the nature of the underlying obligation sought to be adjudicated."). Accordingly, the statute of limitations bars all claims arising prior to January 9, 2016.

Corley's ninth cause of action for unfair competition is governed by a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208. Thus, only those claims arising on or after January 9, 2015 survive in this action.

Finally, the statute of limitations on Corley's tenth cause of action for unjust enrichment is two years. *See Maglica v. Maglica*, 66 Cal. App. 4th 442, 452 (1998) (citing Cal. Civ. Proc. Code § 339). Accordingly, only those claims arising on or after January 9, 2017 are viable.

## V. CONCLUSION

For the foregoing reasons, FedEx's Motion for Partial Summary Judgment (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

March 2, 2020

_____
            **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**