**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Cody R. Kennedy, Esq. (SBN 296061)
Marissa A. Mayhood, Esq. (SBN 334376)
29800 Agoura Road, Suite 210
Agoura Hills, California   91301
Telephone:   (818) 991-8080
Facsimile:   (818) 991-8081
ssaltzman@marlinsaltzman.com
ckennedy@marlinsaltzman.com
mmayhood@marlinsaltzman.com

*Attorneys for Plaintiffs Kawaski Corley, individually and on behalf of all others similarly situated and aggrieved*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KAWASKI CORLEY**, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM INC., A DELAWARE CORPORATION; and **DOES 1 to 100**, inclusive,<br><br>    Defendants. | Case No. 5:19-cv-00429-ODW (SHKx)<br><br>Assigned: Hon. Otis D. Wright, II<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:         December 6, 2021<br>Time:         1:30 p.m.<br>Ctrm:         5D |

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

PLEASE TAKE NOTICE that on December 6, 2021, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 5D, 5th Floor, in the U.S. District Court located at 350 W. First Street, Los Angeles, California, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will and hereby does move to certify the following class:

> All persons who at any time during the Class Period, and within the State of California: (1) directly performed, or were designated as an authorized officer/business contact responsible for the performance of, the "linehaul" transportation of goods for Defendant pursuant to a Linehaul Transportation Service Provider Agreement ("TSPA"), or similarly titled agreement; and (2) were not designated by Defendant as its employees.

This Definition is intended to supersede the definition in the First Amended Class Action Complaint. (Dkt. No. 39, FAC ¶ 18). Plaintiff also proposes the following **Subclass A** comprised of:

> All persons falling within the Class Definition who were designated as 'Authorized Officers' pursuant to a TSPA agreement during the Class Period."

The Class Period includes the four years preceding the filing of the initial complaint in this action, to present (i.e. January 09, 2015 - Present.) (Dkt. No. 39, FAC ¶ 19.) Class Certification is sought on the following claims:

Declaratory Relief- Misclassification (Code Civ. Proc.§ 1060; Labor Code § 3357) Defendant failed to properly classify Plaintiffs and the proposed class as its employees. Plaintiff seeks adjudication by this Court that Plaintiff and the Class are Defendant's employees pursuant to the definitions set forth by California's Labor Code and associated Wage Order No. 9.

Reimbursement of Business Expenses/Unlawful Deductions from Wages (Labor Code § 2802, and Wage Order) On behalf of **Subclass A**. Defendant failed to provide reimbursement for necessary and common business expenditures, including but not limited to, the fuel, vehicle maintenance, insurance, and other

costs/fees required for the linehaul work performed.

<u>Failure To Provide Accurate Itemized Wage Statements</u> (Labor Code § 226) As a result of its failure to properly classify Plaintiff and the Class as FedEx employees, Defendant likewise failed to provide required wage statements pursuant to Labor Code § 226(a).

<u>Derivative Claims:</u> <u>Unfair Business Practices</u>, Bus. & Prof. Code §§ 17200, *et seq.*) This cause of action flows from the alleged misclassification and resulting Labor Code & Wage Order violations described above.

Plaintiff does not seek class certification for the remaining claims alleged in the operative First Amended Complaint. (See Dkt. No. 39.)

Plaintiff Kawaski Corley requests that the Court appoint him as the Class Representative in this matter, and to appoint Marlin & Saltzman, LLP as lead class counsel.

This motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the accompanying Declarations (incl. all exhibits and evidence attached thereto) in support of Class Certification by Cody R. Kennedy, Stanley D. Saltzman, and Plaintiff Kawaski Corley, and all oral argument that may be heard on this matter. This Motion is also based on the pleadings and papers on file in this action.

**DATED**: August 30, 2021               **MARLIN & SALTZMAN, LLP**

By:  s/ *Cody R. Kennedy*
       Stanley D. Saltzman, Esq.
       Cody R. Kennedy, Esq.
       Marissa A. Mayhood, Esq.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................... 1

    A.  FedEx Ground's Transportation and Delivery Services ................ 1

    B.  Defendant's Illusory "TSP" Model .......................................... 2

    C.  FedEx's Relationship With "Authorized Officers," "Business Contacts," and Drivers. ..................................... 5

II.  CLASS & CLAIMS TO BE CERTIFIED ................................. 7

III.  CLASS CERTIFICATION STANDARDS ............................... 7

IV.  THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED. .............. 8

    A.  Numerosity Is Met. ............................................................. 8

    B.  Common Questions of Law and Fact Exist. ............................. 8

    C.  Typicality Is Met. ............................................................... 9

    D.  Adequacy of Representation Is Established. ............................ 10

V.  THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED. ............. 11

    A.  Common Issues of Fact and Law Predominate the Declaratory Relief Sought & Misclassification Analysis ........... 11

        1.  Common Issues Predominate the ABC Test .................... 15

        2.  Common Issues Predominate the *Borello* Test ................. 19

        3.  Common Issues Predominate the *Martinez* Analysis ................................................................ 20

        4.  Common Failure To Reimburse Business Expenses ................................................................ 22

        5.  Common Failure To Provide Wage Statements ................ 23

        6.  Derivative Claims ...................................................... 24

    B.  Class Action Treatment Is Superior to Individual Actions .................................................................... 24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

## **Cases**

*Air Couriers Internat. v. Emp. Dev. Dep't*,
  150 Cal. App. 4th 923 (2007) ................................................................. 20

*Alexander v. FedEx Ground Package System, Inc.*
  765 F.3d 981 (9th Cir. 2014) ......................................................... passim

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 25

*Antelope Valley Press v. Poizner*,
  162 Cal.App.4th 839 (2008) ................................................................. 20

*Arthur Young & Co. v. United States Dist. Court*,
  549 F.2d 686 (9th Cir. 1977) .................................................................. 7

*Auchmoody v. 911 Emergency Services*,
  214 Cal.App.3d 1510 (1989) ............................................................... 13

*Behrazfar v. Unisys Corp.*,
  2009 WL 10673197 (C.D. Cal. 2009) .................................................... 7

*Brinker Restaurant Corp. v. Superior Court*
  53 Cal.4th 1004 (2012) ................................................................... 24, 25

*California Trucking Ass'n v. Su*,
  903 F.3d 953 (9th Cir. 2018) ............................................................... 20

*Castaneda v. Ensign Grp., Inc.*,
  229 Cal. App. 4th 1015 (2014) ........................................................... 22

*Curry v. Equilon Enterprises, LLC*
  (2018) 23 Cal.App.5th 289 .......................................................... 14, 21

*Dynamex Operations W. v. Superior Court*
  4 Cal.5th 903 (2018) ........................................................................ passim

*Estrada v. FedEx Ground Package System, Inc.*
  154 Cal.App.4th 1 (2007) ........................................................ 12, 18, 19

*Ghazaryan v. Diva Limousine, Ltd.*,
  169 Cal.App.4th 1524 (2008) ............................................................. 13

*Gonzales v. San Gabriel Transit, Inc.*,
  40 Cal. App. 5th 1131 (2019) ....................................................... 22, 23

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ..................................................... 7, 8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................8, 9, 10

*Hill v. Eddie Bauer*,
  242 F.R.D. 556 (C.D. Cal. 2007) ...........................................................................7

*Huggins v. FedEx Ground Package Sys., Inc.*,
  592 F.3d 853 (8th Cir.2010)................................................................................18

*In re Activision Securities Litigation*,
  621 F. Supp. 415 (N.D. Cal. 1985) ......................................................................9

*In re Adobe Systems, Inc. Securities Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................10

*In re Facebook Biometric Info. Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) .........................................................................9

*In re First American Corp. ERISA Litig.*,
  258 F.R.D. 610 (C.D. Cal. 2009) .........................................................................9

*Jordan v. Cty. of Los Angeles*,
  669 F.2d 1311 (9th Cir. 1982)............................................................................10

*Kamar v. RadioShack Corp.*
  (C.D. Cal. 2008) 2008 WL 2229166 ...................................................................13

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ............................................................................11

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ............................................................................13, 14, 20, 21

*Moreno v. JCT Logistics, Inc.*,
  2019 WL 3858999 (C.D. Cal. 2019).....................................................................15

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................11

*Overpeck et al v. Fedex Corporation et al*,
  4:18CV07553 (N.D. Cal.).....................................................................................25

*People v. Uber Techs., Inc.*,
  56 Cal. App. 5th 266 (2020) ................................................................................14

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).............................................................................................25

*Rai v. Santa Clara Valley Transp.Auth.*,
  308 F.R.D. 245 (N.D. Cal. 2015) ........................................................................25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

*Rannis v. Recchia*,
 380 F. App'x 646 (9th Cir. 2010) ............................................................... 8

*Rinaldi v. Workers' Comp. Appeals Bd.*,
 227 Cal. App. 3d 756 (1991) ............................................................... 6, 12

*Robinson v. George*,
 16 Cal. 2d 238 (1940) ............................................................................. 11

*Ruiz v. Affinity Logistics Corp.*
 667 F.3d 1318 (9th Cir. 2012) ............................................................... 11

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*
 (1989) 48 Cal.3d 341 ............................................................ 13, 14, 19, 20

*Sav-on Drug Stores, Inc. v. Superior Court*,
 34 Cal.4th 319 (2004) ............................................................... 7, 13, 24

*Schwartz v. Harp*,
 108 F.R.D. 279 (C.D. Cal. 1985) ............................................................. 9

*Selzer v. Bd. of Ed. Of City of New York*,
 112 F.R.D. 176 (S.D.N.Y. 1986) ............................................................. 7

*Slayman v. FedEx Ground Package Sys., Inc.*,
 765 F.3d 1033 (9th Cir. 2014) ............................................................... 12

*Sullivan v. Chase Inv. Services of Boston, Inc.*,
 79 F.R.D. 246 (N.D. Cal. 1978) ............................................................... 9

*U.S. Fire Ins. Co. v. Uribe Tucking, Inc.*,
 WL 3755960 (C.D. Cal. 2013) ............................................................... 11

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ............................................................... 24

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
 10 Cal. 5th 944 (2021) ............................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................. 8

**Statutes**

Bus. & Prof. Code § 17200 ............................................................... 24

Bus. & Prof. Code §17205 ............................................................... 24

Cal. Lab. Code § 226 ............................................................... 23

Cal. Lab. Code § 226(a) ............................................................... 23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Cal. Lab. Code § 2775 ................................................................14, 15, 22

Cal. Lab. Code § 2776 .....................................................................13, 14

Cal. Lab. Code § 2802 ............................................................................22

Cal. Lab. Code §226(a)(8) ......................................................................23

## Rules

FRCP 23(a) ...........................................................................................7, 8

FRCP 23(a)(1) ...........................................................................................8

FRCP 23(a)(2) ........................................................................................8, 9

FRCP 23(a)(3) ...........................................................................................9

FRCP 23(a)(4) .........................................................................................10

FRCP 23(b) .........................................................................................7, 11

FRCP 23(b)(3) ..................................................................................passim

## Other Authorities

3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002)...................7

7A Wright, Miller & Kane, *Federal Practice and Procedure*
   § 1764 (2007 ed.) ................................................................................9

## Regulations

Cal. Code Regs. tit. 8, § 11090..............................................................23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# I.      INTRODUCTION

## A.      FedEx Ground's Transportation and Delivery Services

Plaintiff Kawaski Corley ("Corley" or "Plaintiff") has brought claims on behalf of himself and a putative class of linehaul workers (the "Class") against Fed Ex Ground Package System, Inc. ("Fed Ex" or "Defendant") for various wage and hour violations as alleged within the operative Complaint. These claims arise via Defendant's systematic practice of misclassifying him and similarly situated workers, when in actuality they were performing work as FedEx employees and were entitled to wage and hour protections which were not provided by Defendant.

FedEx is an international corporation engaged in the business of providing transportation delivery services for its clients. (Kennedy Dec. Ex. 2; See also Ex. 1, pgs. 5 & 6 )[1] Defendant defines its "FedEx Ground" services as the "pickup and delivery of small packages, [...] generally within the business-to-business market segment." (See Ex. 2). It boasts "nearly 9 million packages" traveling daily through its "network of more than 600 distribution hubs and local pickup-and-delivery stations throughout the U.S. and Canada." (See Ex. 3, pg. 1). As part of these operations and shipping services, Defendant engages in "linehaul" transport, which can be described as the movement of its customer's goods between its own internal hubs and stations, prior to reaching their end destination. (Ex. 4 – Tangi, at 72:4-20; See Ex. 3, pg. 1) ("Linehaul: Using tractors, trailers are pulled over-the-road from station to hub, hub to hub, and hub to station — and, in some cases, from customer locations to or from stations or hubs"). This "linehaul" transportation falls entirely within FedEx's own internal "Business Network". (See Ex. 2). FedEx maintains approximately eight (8) hubs and fifty (50) stations within California specifically for the purpose of transporting these goods. (Ex. 4, at 135:9-20).

At the stations/hubs customer goods are aggregated and loaded by FedEx personnel onto trailers owned by FedEx, displaying the FedEx logo. FedEx

---

[1] Unless stated otherwise, all exhibit references herein shall refer to the exhibits attached to the Declaration of Cody Kennedy ISO Motion for Class Certification.

determines all logistics, including the destinations for the goods, along with the scheduled start and end times for each leg of transportation. The linehaul runs are then assigned by FedEx personnel to linehaul "TSPs" (discussed below) to be carried out by individuals that Defendant does not classify as FedEx employees.

## B. Defendant's Illusory "TSP" Model

In order to carry out its linehaul transportation, FedEx utilizes a group of workers that it does not consider to be "FedEx employees." (Ex. 4, at 59:1-8; Exs. 5-7, pg. 5; Ex. 8, pg. 19; Ex. 9, pg. 51; Ex. 10, pg. 4). Despite the fact that these workers carry out the exact transportation services that FedEx advertises to its customers, on FedEx's behalf, between FedEx's own facilities, and are explicitly required to be "identif[iable]" as "part of the FedEx Ground system", Defendant represents that they instead fall under the label of independent "Transportation Service Providers" (hereinafter "TSPs"). (Ex. 4, at 57:17-25; Ex. 1, pg. 18).

As a matter of both written policy and practice, FedEx requires that a TSP be formed/maintained before any work is able to be carried out on its behalf. (See e.g. Exs. 5-9 (Operating Agreements); Ex. 4, at 189:22-190:9). This is true even where it would result in a TSP being comprised of a single linehaul driver, personally performing all work assigned to him/her by FedEx. (Ex. 4, at 49:18-50:8; 98:13-18) ("The TSP is the corporation. That corporation […] could have a single employee that is an authorized officer who chooses to drive their tractor and perform services for that business contracted with FedEx Ground.") FedEx retains influence and control over TSP hiring decisions,[2] choice of vendors, classification of workers, choice of tractors and technology, along with various other business decisions. (Ex. 12 (hiring decisions); Ex. 8, pg. 12; Ex. 9, pg. 60; Ex 11 (tractor requirements,

---

[2] FedEx incorporates its own hiring/training standards that the TSP's drivers must meet, exceeding the legal standards required by the DOT. (Ex. 4, at 37:18-23, 123:24-124:22, 128:18-22, 129:5-130:1; Ex. 24). TSPs are required to use Defendant's third-party vendor for driver approval, drivers cannot start work until approved despite regular objections by TSPs. (Ex. 4, at 93:22-94:17, 124:19-125:14, 131:1-23)

including but not limited to color and size); Exs. 26-28 (technology standards); Ex. 4, at 37:18-23, 40:20-41:1, 64:23-65:6, 65:23-66:22, 93:10-14, 106:14-23, 111:25-112:7, 117:5-118:23, 120:7-121:3, 123:24-124:22, 189:11-21; See also generally Exs. 5-10, & 20). Similarly, despite being supposedly independent, FedEx retains a right of final review, authorization, and approval for any changes to a TSP's ownership, along with the right to refuse to recognize such changes. ((Ex. 5, pgs. 71, 72; Ex. 6, pgs. 72, 73; Ex. 7, pgs. 80, 81; Ex. 8, pgs. 22, 23; Ex. 9, pgs. 46, 47; Ex. 4, at 120:7-121:3; Ex. 13 ("All service providers […] have agreed that any time a transfer or stock sale request is made, FedEx Ground has the right to consent or not consent to the change […] FedEx Ground will not recognize transfers and/or stock sales completed between service providers without its prior written consent")). FedEx reserves this control as a means to ensure that no TSP has legitimate bargaining power or independence in its dealings with FedEx. (Ex. 13 ("FedEx Ground may withhold its consent if, among other things, the assignment would result in […] FedEx Ground relying heavily on a single service provider (or service providers controlled by common shareholders or officers) for service in a geographic or hub area")). In fact, FedEx even designates and controls the type of business form that the TSPs may take, requiring TSPs to take the form of corporations, while disallowing them from utilizing any other type of business structure such as a sole proprietorship, partnership, LLC or LLP. (Ex. 4 – Tangi, at189:22-190:25; Ex. 5, pg. 69; Ex. 6, pg. 70; Ex. 7, pg. 78; Ex. 8, pg. 8; Ex. 9, pg. 56).

All TSPs, and the individuals performing the work thereunder, are subject to a set of uniform rules and requirements, promulgated by Defendant via its uniform Service Provider Agreements (dubbed "TSPAs".) (Ex. 4, at 179:21-181:5, 183:21-25). The TSPA is a mandatory form agreement, created by FedEx, that cannot be changed, altered, or negotiated by the TSP. (Ex. 4, at 180:15-181:5). While performing the linehaul work assigned by FedEx the TSPs, and drivers, are required to operate exclusively under FedEx's DOT number. (Ex. 4, at 37:18-23; Ex. 5, pg.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

57; Ex. 6, pg. 58; Ex. 7, pg. 65; Ex. 8, pg. 54; Ex. 9, pg. 28; Ex. 14). TSPs are further required to create and utilize a FedEx "MyGroundBiz" account via FedEx's MyGroundBiz website (similar to an employee intranet system), utilize "FedEx approved" vendors for various services, including driver training, and vehicle safety technology. (Ex. 4, at 75:17-76:16 (required to create account), 76:17-77:10, 82:23-83:13, 175:10-21 (approved vendors), 83:14-84:10 (VEDR system), 80:4-15, 128:4-22; Ex. 24 (training); Exs. 26-28 (technology standards)). TSPs are not free to choose their own operating hours, or turn down run assignments without repercussion; rather, FedEx designates how many days a week the TSPs must operate (unilaterally changing requirements to seven days per week), and the percentage of loads dispatched by FedEx that they must accept (90+%.) (Ex. 4, at 160:4-10, 245:23-246:17; Ex 1, pg. 24; Ex. 5, pg. 85; Ex. 6, pg. 86; Ex. 7, pg. 94; Ex. 8, pg. 38; Ex. 9, pg. 12; Exs. 15, 19, 25[A1]). FedEx also retains the right to disqualify individual drivers from performing FedEx linehaul work on behalf of a TSP. (Ex. 4, at 98:1-12, 105:14-25; Exs. 5-7, pgs. 10-18; Exs. 16, 17). Further, in order to make sure that TSPs are operating as part of the FedEx brand, FedEx drafts its own customer service, safety, vehicle, and appearance standards, along with other nondiscretionary requirements, and obligates its TSPs to directly incorporate those requirements into the linehaul work performed on its behalf. (Exs. 5-7, pgs. 9-18; Ex. 8, pg. 11; Ex. 9, pg. 44; Ex. 18; Ex. 4, at 180:15-181:5; Exs. 26-28 (technology standards)). The ultimate result, is a uniform workforce, subject to the same uniform customer service, appearance, and safety requirements crafted by FedEx, carrying out FedEx's transport services, for FedEx customers, on behalf of FedEx. (Ex. 4, at 64:23-65:6; See Ex. 1, pg. 6, ("One of FedEx Ground's strengths has always been - and continues to be - our relationships with customers, and transportation service providers (TSPs) are a part of that."; Ex. 4, at 65:7-66:5 ("[W]hen you're contracted with FedEx Ground, you're representing FedEx Ground in brand awareness and conducting your business activities with proper decorum".); Ex. 19 ("Ensure all services are provided

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

in a manner consistent with customer expectations and the FedEx Ground brand").)

## C. FedEx's Relationship With "Authorized Officers," "Business Contacts," and Drivers.

As part of its operations, FedEx requires direct personal access to each TSP. Each TSP is required to designate an "Authorized Officer" and "Business Contact". (Ex. 5, pg. 71; Ex. 6, pg. 72; Ex. 7, pg. 80; Ex. 8, pg. 9; Ex. 9, pg. 57; See also Ex. 19) ("To ensure that contractual and operational questions are addressed quickly and with the right people, service providers agree to designate the following representatives to communicate with FedEx Ground"); Ex 4 - Tangi, at 89:8-12; 89:20-90:4 ("The business itself is -- way our model is set up is really to conduct business with the authorized officer and the business contact"). If no business contact is selected, the authorized officer becomes the business contact by default. (Ex 4 - Tangi, at 141:2-142:6). These workers serve as FedEx's direct point of contact, and are charged with ensuring that all work is carried out according to FedEx's business standards. (Ex 4 - Tangi, at 89:20-90:4; 98:1-12; 99:1-8; 105:14-25; 140:2-22). Authorized Officers may serve as linehaul drivers, transporting goods directly pursuant to the TSPA, or hire additional linehaul drivers, subject to FedEx's internal requirements and approval. (Ex 4 - Tangi, at 49:17-50:20, 98:13-99:8).

Notably, Authorized Officers and Business Contacts are required at all times to ensure that the linehaul work carried out "**can be identified as being part of the FedEx Ground system,**" and to protect FedEx's "**brand image.**" (Ex. 1, pg. 18; Ex. 4, at 57:17-25; Ex. 19). In furtherance of this goal, FedEx's written policies require that all linehaul transportation performed must "meet [FedEx's] standards of customer service," and workers must "[f]oster the professional image and good reputation of FedEx Ground and contractors with shippers and recipients," "[a]dhere to vehicle identification and operating appearance standard," "wear FedEx Ground-approved apparel […] maintained in good condition, within reasonable customer expectations," "[c]ooperate with FedEx Ground employees, customers, etc.," "[m]eet [FedEx's] scheduled run times," " [a]ssist in the efficient and timely

movement of packages and trailers between shippers, recipients, stations, and hubs, by performing such en-route pickups, deliveries, trailer spots, and shuttles," "[p]rovide FedEx Ground with advance notice of routes to be taken for each Linehaul movement," and "[c]onduct all business activities with integrity and honesty, in a professional manner, and with proper decorum at all times." (See Exhibit 1, pg. 20; Ex 4 - Tangi, at 65:15-66:5; Exs. 5-7, pg. 9; Ex. 8, pg. 3; Ex. 9, pg. 51). These requirements also extend to all drivers performing work under the TSP. (Ex 4 - Tangi, at 99:1-8)

These Authorized Officers and Business Contacts serve in a role akin to middle-managers for FedEx. See *Rinaldi v. Workers' Comp. Appeals Bd.*, 227 Cal. App. 3d 756, 765, 278 Cal. Rptr. 105, 111 (Ct. App. 1991). They are directly answerable to FedEx's own Linehaul Managers, and are required to enforce FedEx's requirements and standards upon the Linehaul Drivers when directed by FedEx.

> Q. […] if drivers were not meeting customer service standards, what would FedEx do in that situation if that was becoming a problem? [Objection]
> THE WITNESS: FedEx Ground would, depending on how it was made aware, you know, if it was a customer that called into a particular station, you know, complaining about a driver or driver's behavior or an interaction with a driver, it would typically go to the senior manager or linehaul manager of that station. And that senior manager would get with the authorized officer to discuss the situation, get their side of what happened with the driver, you know, and hold a business discussion with the authorized officer as far as, you know, just insuring that they are in fact adhering to the parts of the agreement to insure that their persons are conducting themselves with proper decorum with honesty and integrity [...]

(Ex 4 - Tangi, at 68:7-69:3; See also 69:4-69:18)

> Q. What about if -- just things more of a general nature, drivers not cooperating with FedEx staff. Is that something that could be reported? [Objection]
> THE WITNESS: Yes, it would be. If a driver was being rude at the check-in window, which has happened, you know, through the course of time […] then that would be elevated to the linehaul manager. And the linehaul manager would contact the business contact or the authorized officer to address the situation with their employee.

(Ex 4, at 96:23-97:24; 66:15-67:21; 94:18-95:17; 96:2-22, 147:2-6, 148:2-12)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Further, the drivers themselves remain under the direct supervision of FedEx personnel while they are working within the FedEx hubs and terminals, they must "cooperate" with FedEx Ground personnel and customers, and drivers may be reported to FedEx management by the general public while on the road via FedEx's customer service line that is prominently displayed on each trailer. (Ex 4 - Tangi, at 96:2-97:24, 99:9-24, 148:2-12.)

## II.   CLASS & CLAIMS TO BE CERTIFIED

Plaintiff seeks to certify the **Class** and **Subclass A** as defined in the Notice of Motion preceding this motion. Likewise, Plaintiff seeks to certify the specific claims identified in the Notice of Motion.

## III.   CLASS CERTIFICATION STANDARDS

To be certified, the class must meet the requirements of FRCP 23(a) and the requirements of at least one subsection of 23(b). *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996). In this case, Plaintiff seeks to certify this matter pursuant to Fed. R. Civ. P. 23(b)(3). The requirements of Rule 23 "should be liberally construed." 3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002). All factual allegations in Plaintiff's operative complaint must be accepted as true for purposes of class certification. *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977); *Selzer v. Bd. of Ed. Of City of New York*, 112 F.R.D. 176, 178 (S.D.N.Y. 1986) (finding that "[a] motion for class certification is not the occasion for a mini-hearing on the merits").

As recognized by the Cal. Supreme Court, "[t]he certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " *Sav-on Drug Stores, Inc.,* 34 Cal. 4th at 326. Therefore "it is no accident that 'wage and hour disputes (and others in the same general class) routinely proceed as class actions.' *Behrazfar v. Unisys Corp.*, No. SACV 08-0850-AG(RCX), 2009 WL 10673197, at *2 (C.D. Cal. June 3, 2009); See also *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007).

## IV.     THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED.

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Under Rule 23(a), the moving party must demonstrate, first, that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### A.     Numerosity Is Met.

Rule 23(a) (1) requires that the class be "so numerous that joinder of all members is impracticable," not impossible. Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds. Here, numerosity of the proposed class cannot reasonably be disputed as thousands of putative class members performed work as linehaul drivers throughout the relevant time period.  (Ex. 4, at 108:3-12). Defendant has also confirmed that there are "hundreds" of TSPs, each with an Authorized Officer and Business Contact. Members of the Class are readily identifiable via Defendant's own contracts and business records, including but not limited to, records of each linehaul run performed. (Ex. 4, at 107:19-108:2) Ultimately, the number of Class Members unquestionably exceeds the minimum numerosity threshold for maintenance of a class action. See *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (class of twenty plaintiffs sufficiently numerous to support certification).

### B.     Common Questions of Law and Fact Exist.

To satisfy Fed. R. Civ. P. 23(a) (2), not all questions of law or fact need to be common. In fact, a single common question can suffice. *Haley*, *supra*, 169 F.R.D. at 648. As the Ninth Circuit emphasized in *Hanlon*:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

facts coupled with disparate legal remedies within the class.
*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019-1020 (9th Cir. 1998)

Because the claims of all putative class members involve the same alleged Labor Code violations and are susceptible to common proof, Rule 23(a) (2)'s commonality requirement is satisfied. However, as courts in this district often analyze the commonality requirement and predominance requirement under Rule 23(b)(3) together, Plaintiff will address both requirements below. *E.g., In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 544 (N.D. Cal. 2018).

### C.    Typicality Is Met.

Rule 23(a) (3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement should be construed broadly." *In re Activision Securities Litigation*, 621 F. Supp. 415, 428 (N.D. Cal. 1985). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also In re First American Corp. ERISA Litig.*, 258 F.R.D. 610, 618 (C.D. Cal. 2009) ("typicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff'); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Class representatives are not required to have identical interests with the class members.  "[T]he requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members." (7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.). In other words, "[f]actual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory." *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978). As the Ninth Circuit has noted, typicality is satisfied so long as the named plaintiff's claims "stem[ ] from the same event,

practice, or course of conduct that forms the base of the class claims and [is] based upon the same legal remedial theory." *Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).

Here, Plaintiff falls within the class and subclass definitions alleged, having performed work as both a linehaul driver, and acting as an authorized officer/business contact pursuant. (Corley Dec. ¶ 2; Ex. 21, Corley at 121:7-9; Exs. 10, 20) Plaintiff was subject to the same policies, practices, and alleged misclassification giving rise to liability, and seeks recovery for the same claims alleged on behalf of the proposed Class Members. Accordingly, typicality is met.

**D.    Adequacy of Representation Is Established.**

Adequacy under Rule 23(a) (4) requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by qualified and competent counsel. *See Hanlon*, *supra*, 150 F.3d at 1020 (adequacy turns on absence of conflicts with other class members and whether named plaintiffs and their counsel prosecute the action vigorously). The test is "whether or not plaintiffs have demonstrated a willingness and vigor to prosecute the action, whether they have any disabling conflicts going to the heart of the controversy, and whether they have qualified counsel." *In re Adobe Systems, Inc. Securities Litig.*, 139 F.R.D. 150, 156 (N.D. Cal. 1991) (plaintiffs understood gravamen of their claims, and need not be intimately familiar with every issue).

Plaintiff Kawaski Corley, with the aid of diligent and experienced Counsel, has already proven ready, willing, and available to litigate this action. (Declaration of Kawaski Corley ISO Class Certification ("Corley Dec."), ¶¶ 3, 9). Mr. Corley has been responsive and willing to provide information requested of him by Plaintiff's Counsel. *Id.* Mr. Corley has similarly affirmed that he has no personal conflicts of interest in litigating this matter and that at all times he will remain committed to placing the collective needs and interests of the class above his own. *Id.* at ¶¶ 8-12.

Additionally, as set forth in the Declaration of Stanley D. Saltzman submitted

herewith and incorporated herein by reference, the Plaintiffs have retained counsel well-qualified and sufficiently experienced to ensure vigorous prosecution of this litigation on behalf of the putative class. *See*, *generally*, Declaration of Stanley D. Saltzman. This declaration demonstrates that counsel for the class have extensive experience in the handling of class actions, including "wage and hour" claims and has a substantial history of serving as class counsel in significant cases with positive results for their clients.  Thus, the adequacy element has been met.

## V.      THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED.

Under Rule 23(b)(3), the court must find that (1) common questions of law or fact predominate over any questions affecting only individual members of the class, and (2) that a class action is superior to other methods available for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Negrete v. Allianz Life Ins. Co. of N. Am.,* 238 F.R.D. 482, 487-489 (C.D. Cal. 2006). Here, Plaintiff satisfies both predominance and superiority.

### A.      Common Issues of Fact and Law Predominate the Declaratory Relief Sought & Misclassification Analysis

Here, common questions regarding whether FedEx is the "employer" of the Class Members permeate each of the claims and theories of liability asserted. As will be discussed in more detail below, Plaintiff not only challenges FedEx's classification of its linehaul drivers, but also the legitimacy of Defendant's "TSP" structure as an unlawful attempt to forge an end-run around its obligations as an employer.

Under California law, there is a presumption of employment whenever one is performing work and labor for another. *Dynamex Operations W. v. Superior Court* 4 Cal.5th 903, 955–956 (2018), reh'g denied (June 20, 2018); *U.S. Fire Ins. Co. v. Uribe Tucking, Inc.*, No. SACV 11-54-JST MLGX, 2013 WL 3755960, at *4 (C.D. Cal. July 16, 2013), citing *Robinson v. George*, 16 Cal. 2d 238, 242 (1940); *Ruiz v. Affinity Logistics Corp.* 667 F.3d 1318, 1323 (9th Cir. 2012); *Alexander v. FedEx*

11

*Ground Package System, Inc.* 765 F.3d 981, 992 (9th Cir. 2014) ("the burden of proof is on the party attacking the employment relationship".)

Defendant has a well-documented history of failed schemes to avoid providing its workers with employment protections. Both the Ninth Circuit and Cal. Court of Appeal have already recognized that allegations of misclassification, brought by similar groups of FedEx drivers, could in fact be addressed on a classwide basis, and ultimately determined that those drivers were FedEx in fact employees. *Alexander v. FedEx Ground Package System, Inc.* 765 F.3d 981, 984 (9th Cir. 2014) (As a central part of its business, FedEx Ground Package System, Inc. ("FedEx"), contracts with drivers to deliver packages to its customers. [...] FedEx contends its drivers are independent contractors under California law. **Plaintiffs, a class of FedEx drivers in California, contend they are employees. We agree with plaintiffs**.)(Emphasis Added.); See also *Estrada v. FedEx Ground Package System, Inc.* 154 Cal.App.4th 1, 4 (2007) ("**We affirm the finding that the drivers are [FedEx] employees**, **the certification order**, and the finding that attorneys' fees are recoverable")(Emphasis Added.); See also *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1037 (9th Cir. 2014).

In the wake of the *Alexander* and *Estrada* decisions, rather than accepting and complying with its obligations under the Labor Code, FedEx devised a system that instead places a nominal labor contractor (i.e. TSP) between itself and its drivers in an attempt to obfuscate its status as the true employing entity. Luckily, the California Labor Code and Wage Orders are readily equipped to address such creative business arrangements. See e.g. *Rinaldi v. Workers' Comp. Appeals Bd.*, 227 Cal. App. 3d 756, 765 (Ct. App. 1991)("**Where a labor contractor renders service (as by actually supervising the work), he or she is presumptively an "employee" unless shown to be an independent contractor**.")(Emphasis Added.)

12

The Cal. Supreme Court has repeatedly affirmed California's "clear public policy" directed at the enforcement of California's wage and hour laws "for the benefit of workers." *Sav-on Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 340 (2004). As long by California's Courts:

> Legislative enactments authorizing regulation of wages, hours, and working conditions are for the protection and benefit of the employees. [Citation] These remedial statutory provisions are to be liberally construed to promote such protection. [Citation] To such end, a court must, whenever possible, interpret statutes to make them workable and reasonable to achieve a practical, rather than technical, application.

*Auchmoody v. 911 Emergency Services,* 214 Cal.App.3d 1510, 1516 (1989); See also *Ghazaryan v. Diva Limousine, Ltd.,* 169 Cal.App.4th 1524, 1528 (2008); *Kamar v. RadioShack Corp.* (C.D. Cal., May 15, 2008, No. CV07-2252AHM(AJWX)) 2008 WL 2229166, at *3.

In order to achieve the overarching purpose and intent of promoting worker protections, the Cal. Supreme Court has recognized that determinations of employment are "broad enough to reach through to **straw men and other sham arrangements to impose liability** [...] **on the <u>actual</u> employer**." (Martinez, 49 Cal. 4th at 71 (emphasis and underlining added; footnote omitted). This sentiment is echoed by the Labor Code itself, which specifically recognizes and extends the application of employment misclassification claims to "individuals" that may be construed to have been "acting as a […] corporation" in a "business service provider" capacity. Cal. Lab. Code § 2776 ("If an individual acting as a […] corporation ("business service provider") contracts to provide services to another such business […] ("contracting business"), the determination of employee or independent contractor status of the business services provider shall be governed by […]") In situations where a true "bona fide business-to-business contracting relationship" can be established, the question of misclassification will be governed by the common-law test promulgated by *Borello;* alternatively, if such a relationship cannot

be established, then the exception to the ABC test is not met and "Section 2775 and the holding in *Dynamex*" apply. Cal. Lab. Code §§ 2775, 2776.

As will be discussed below, both the ABC test and the common law *Borello* analysis hinge upon the resolution of common issues, classwide evidence and testimony. The question of whether the TSPs and Defendant were in a bona fide business-to-business contracting relationship may also be answered on a classwide basis. For example, in order to establish such a relationship, Defendant must prove, among other things, that each TSP was free to "negotiate its own rates"; however, Defendant has already admitted that the TSPs were universally unable to do so. (Ex. 4, at 180:24-181:5)

It is anticipated that Defendant may argue the ABC test does not apply here, relying on *Curry v. Equilon Enterprises, LLC* (2018) 23 Cal.App.5th 289 and its progeny to posit that the question of misclassification should be instead analyzed under *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). However, the *Curry* case is readily distinguishable, as the Court was not posed with, and did not address, the application of Labor Code Sections 2775 & 2776, which were later enacted and serve to clarify existing law. Likewise, *Curry* did not address the allegations here that the "business service providers" themselves had been misclassified by the employing entity. Further, unlike *Curry*, "[t]his is not a situation in which a putative joint employer [merely] leases facilities to a worker's direct employer and has no involvement in the worker's employment." *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 297 (2020), as modified on denial of reh'g (Nov. 20, 2020), review denied (Feb. 10, 2021). Finally, even if this Court were to find *Curry* applicable here, that court's "comments regarding the 'suffer or permit to work' definition were ... non-binding dicta" because the court merely "suggested that there may be an alternative standard for 'suffer or permit to work' in the joint employment context, [but] it did not decide that issue, and ultimately evaluated the merits of the joint employment

claim under the ABC test." See *Moreno v. JCT Logistics, Inc.*, No. EDCV172489JGBKKX, 2019 WL 3858999, at *7 (C.D. Cal. May 29, 2019) ("The Court agrees that *Curry* did not conclusively hold that the ABC test does not apply in the joint employment context.")

In any event, the question of which of these misclassification tests applies to Plaintiff and the Class simply presents a common and uniform question of law to be answered by this Court, supporting class certification.

### 1.   Common Issues Predominate the ABC Test

Pursuant to Labor Code § 2775, et seq., Plaintiff and the Class shall be considered employees of FedEx unless it can affirmatively establish that:

(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
(B) The person performs work that is outside the usual course of the hiring entity's business.
(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Lab. Code § 2775; See also *Dynamex, supra,* 4 Cal.5th 903.

Because each part of the ABC test may be independently determinative of the employee or independent contractor question, certification is proper where commonality is met for even one of the elements. Id. at 966 ("[O]ur conclusion that there is a sufficient commonality of interest under part B of the ABC test is sufficient in itself to support the trial court's class certification order") Here, each of these elements functions as a common question that may be addressed by examining Defendant's uniform contracts, corporate testimony, and business records.

For example, FedEx retains ample control over Plaintiff and the Class consistent with an employment relationship. See *Dynamex, supra,* 4 Cal.5th at 958. More importantly, however, is that Defendant's right to control is uniform. Defendant maintains consistent companywide policies and practices regarding the work requirements applicable to all Plaintiffs and class members. (Ex. 4, at 40:20-

41:1; 176:22-177:11; 99:1-8)  (Requirements of the TSPA apply to both Authorized Officers and the Drivers). Here, Defendant's TSP agreements and corporate testimony confirm that Plaintiff and the Class were required to meet the same "standards of service" that "FedEx Ground has represented to [its] shippers and recipients". (Exs. 5-7 , pg. 9; Ex. 4, at 192:15-194:3; Ex. 1, pg. 20). This entails, among other things "Cooperat[ing] with FedEx Ground's employees customers and other contractors", "Provid[ing] FedEx Ground with advance notice of routes to be taken for each linehaul movement", "Foster [ing] the professional image and good reputation of FedEx Ground […] with shippers and recipients", "adhering to [FedEx's] vehicle identification and operator appearance standards", and "Conduct[ing] all business activities with integrity and honesty, in a professional manner, and with proper decorum at all times".[3] (Ex. 1, pg. 20); See also Ex. 4 – Tangi, at 65:23-66:5; compare *Alexander*, 765 F.3d at 990 (agreement that required FedEx drivers to comply with "standards of service" including requirements to "[f]oster the professional image and good reputation" of the company and conduct business activities with "proper decorum" supported common proof of a right to control); Narayan v. EGL, Inc., 616 F.3d 895, 902 (9th Cir. 2010) (holding that a defendant-imposed requirement was evidence of control when it was intended to meet "*the industry standard"* and *"customer's requirements*") (emphasis added). FedEx has confirmed that its own internal linehaul managers are tasked with making sure these standards are enforced. (Ex. 4, at 68:8-18)  ("If a driver was being rude at the check-in window, which has happened, you know, […] then that would be elevated to the linehaul manager. And the linehaul manager would contact the business contact or the authorized officer to address the situation […]"; "[I]f it was

---

[3] FedEx obligates TSPs to incorporate FedEx's heightened safety and training standards, and to utilize certain "FedEx approved" vendors when carrying out the work performed. (Ex. 4 – Tangi, at 76:17-77:10, 80:4-81:25, 82:23-83:13, 175:10-21; Ex. 24). Drivers are likewise required to wear ID badges with the FedEx logo and ID numbers issued by FedEx that correspond with FedEx's internal systems. (Ex. 4 – Tangi, at 175:25-176:14; Ex. 22).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

a customer that called into a particular station […] complaining about a driver or driver's behavior or an interaction with a driver, it would typically go to the senior manager or linehaul manager of that station.") FedEx controls and supervises the station and hub facilities where linehaul drivers performed their work, and has confirmed that its personnel were authorized to report violations of these standards to FedEx linehaul management. (Ex. 4, at 96:2-97:24). While on the road, drivers could be reported to FedEx's Linehaul Management by the general motoring public. (Ex. 4, at 66:15-69:18). The ultimate expectation is that the linehaul drivers would be identified as, and protect, the FedEx brand and image:

> **The expectation is that they be identified as -- and really protecting the brand** is what that means. Right? Is recognizing that they're – **when you're contracted with FedEx Ground, you're representing FedEx Ground** in brand awareness and conducting your business activities with proper decorum

(Ex. 4, at 65:23-66:4); See also (Ex. 1, pg. 20).

Similarly, the question of whether or not the work performed by the linehaul drivers falls "outside the usual course of the hiring entity's business" can easily be determined on a classwide basis. It is indisputable that linehaul operations constitute a part of the transportation services that FedEx offers to its customers. (Ex. 4, at 69:19-70:10, 57:17-25) ("[L]inehaul transport is necessarily a part of those shipping service[s], correct? A. It is a necessary part to move the parcels"). Defendant openly embraces, and even explicitly requires, that Plaintiff and the Class "conduct business that can be identified as being part of the FedEx Ground system" (Ex. 1). Accordingly, Plaintiff and the Class are a key piece of the puzzle in Defendant's operations, performing transportation work between FedEx's own facilities, under FedEx's own DOT number, and directly "represent[ing] FedEx" while performing such work. (Ex. 5, pg. 57; Ex. 6, pg. 58; Ex. 7, pg. 65; Ex. 8, pg. 54; Ex. 9, pg. 28; Ex. 14; Ex. 4 – Tangi, at 37:18-23; 58:3-7 ("When they are operating under our DOT number, that business is representing FedEx Ground."; "they are a part of the puzzle") Defendant obtains the customers for its deliveries, sets the rate that the customers will be charged, determines the pick up and delivery locations, and even

17

requires Class Members to "become knowledgeable about services and operations of FedEx Ground" and to protect the "FedEx Ground Brand", "reputation", and "image". (Ex. 4, at 65:21-66:5, 99:20-24, 101:3-8; 181:25-182:3, 183:18-25; Ex 19, pg. 2-3; See *Dynamex, supra*, 4 Cal. 5th at 965–66. As discussed by the Cal. Supreme Court, "here the hiring entity is a delivery company and the question whether the work performed by the [...] drivers within the certified class is outside the usual course of its business is clearly amenable to determination on a class basis." *Id*; See also *Alexander, supra*, 765 F.3d at 996 ("The work that the drivers perform, the pickup and delivery of packages, is essential to FedEx's core business."); *Estrada, supra*, 64 Cal.Rptr.3d at 334 (Same); *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 859 (8th Cir.2010) (Drivers "performed work that was the essence of FedEx's business, namely, 'transportation and delivery service' ")

The third element, whether Plaintiff and the Class are "customarily engaged in an independently established trade, occupation, or business", is likewise subject to common proof. As discussed above, it is a uniform FedEx requirement for the Class to ostensibly operate under a TSP. Plaintiff alleges that these TSPs cannot be considered "independently organized" for purposes of Prong C due to uniform restrictions/limitations placed upon them by FedEx. As discussed previously herein, in order to perform the linehaul work at issue, FedEx requires that all TSPs be organized as corporations (as opposed to LLPs, LLCs, Sole Proprietors, etc.), they cannot negotiate the terms or rates of their contracts with FedEx, and FedEx retains oversight and final right of approval rights regarding certain hiring decisions, and changes in TSP ownership. (Exs. 5-7, pgs. 9-18; Ex. 8, pg. 11; Ex. 9, pg. 44; Ex. 13; Ex. 18.) The TSPs are required to utilize FedEx's online business portal, operate under FedEx's DOT number while performing work under the agreements, operate for FedEx seven days per week, and to accept 90% of the runs assigned by FedEx dispatch. (Ex. 4, at 160:4-10, 245:23-246:17; Ex 1, pg. 24; Ex. 5, pg. 85; Ex. 6, pg. 86; Ex. 7, pg. 94; Ex. 8, pg. 38; Ex. 9, pg. 12; Exs. 15[A2], 19, 25). Likewise, the fact

that "the work performed by the drivers is wholly integrated into FedEx's operation" weighs against a determination that the TSPs were engaged in a distinct operation or business. *Alexander, supra,* 765 F.3d at 995.

### 2.   Common Issues Predominate the *Borello* Test

Under the common law *Borello* test, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired". *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350.

Courts applying the common law test may also consider "secondary" factors: (1) whether the worker is engaged in a distinct occupation or business, (2) whether the work is usually done under the principal's direction, (3) the skill required, (4) whether the principal or worker supplies the instrumentalities, tools, and place of work, (5) the length of time for which the services are to be performed, (6) the method of payment, whether by time or by job, (7) whether the work is part of the principal's regular business, and (8) whether the parties believe they are creating an employer-employee relationship. *Estrada, supra,* 154 Cal.App.4th at 10.

The Cal. Supreme Court has recognized that "the three elements of the ABC test are prominent factors already listed in *Borello*", including the primary right to control analysis. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 956 (2021). Accordingly, for the same reasons discussed above in relation to the ABC test, common issues also predominate the *Borello* analysis.

Other, less prominent, *Borello* factors likewise support certification. Because Plaintiff and the Class perform the same linehaul trucking work, pursuant to the same nonnegotiable agreements, schedules, and addendums, questions as to the "skill required" and whether the type of work performed is that "usually done under the principal's direction or by a specialist without supervision" remain uniform. Factors such as who supplies the instrumentalities, tools, and place of work; the method of payment; and the parties beliefs regarding the type of relationship created, are

19

directly specified and addressed by Defendant's uniform agreements, addendums, and business practices. (Exs. 5-10, & 20). In regards to the length of work performed, Defendant has acknowledged that TSP agreements automatically renew, and work may continue indefinitely  (Ex. 4, at 187:15-188:23). On average, the drivers working under a TSP perform FedEx linehaul work for several years. Id.; See *Alexander, supra,* 765 F.3d at 996 (9th Cir. 2014); See also *Antelope Valley Press v. Poizner*, 162 Cal.App.4th 839 (2008) ("[T]he notion that an independent contractor is someone hired to achieve a specific result that is attainable within a finite period of time ... is at odds with carriers who are engaged in prolonged service to [an employer].");* Air Couriers Internat. v. Emp. Dev. Dep't*, 150 Cal. App. 4th 923, 938, (2007) (holding that, where many drivers had worked for "years," these "lengthy tenures" were "inconsistent with independent contractor status").

### 3.     Common Issues Predominate the *Martinez* Analysis

As discussed above, it is anticipated that Defendant will argue that the question of misclassification should be addressed via the test espoused under *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). Although that legal issue contested, common issues would still predominate. Pursuant to *Martinez*, "[t]o employ [] has three alternative definitions. It means (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id*. Because these definitions are "alternatives", and employment may be established under each independently, common issues need only predominate at least one of the definitions.

The "engage to work" definition is the same "common law" test set forth in *Borello*. See *Martinez, supra*, 49 Cal. 4th at 64 (The "definition of employment incorporates the common law definition as one alternative"); *California Trucking Ass'n v. Su*, 903 F.3d 953, 958 (9th Cir. 2018). Accordingly, the common issues, facts, and evidence, previously discussed herein apply equally under *Martinez*.

In regard to the second definition, the Cal. Supreme Court in *Dynamex* has

concluded that the term "suffer or permit" used within the Wage Order embodies the previously discussed ABC test. However, the Court in *Curry v. Equilon Enterprises, LLC* questioned the application of the ABC test under certain circumstances where there is an uncontested "primary employer." *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289, 311. Ultimately, the *Curry* court looked to "defendant's knowledge of and failure to prevent the work from occurring", but also analyzed the relevant facts against the ABC test in an "abundance of caution." Id. Ultimately, both the ABC test and the question of whether FedEx had "knowledge of and fail[ed] to prevent the work from occurring" may be addressed on a classwide basis. Here, the linehaul transportation was performed between FedEx's own facilities, FedEx had to specifically grant access to those facilities in order for the drivers (who were required to wear FedEx issued ID badges) to perform their work. (Ex. 4 – Tangi, at 175:25-176:14; Ex. 22). While runs are being performed, FedEx keeps track of which driver has been assigned to which route, by which TSP. (Ex. 4 – Tangi, at 107:6-18; 111:9-19). Further, while performing work for FedEx the drivers operate exclusively under FedEx's DOT number and utilize FedEx trailers and dollies. ((DOT No.: Ex. 5, pg. 57; Ex. 6, pg. 58; Ex. 7, pg. 65; Ex. 8, pgs. 54; Ex. 9, pg. 28; Ex. 14); (Dollies: Ex. 1, pg. 19; Ex. 4 – Tangi, at 172:3-11; Exs. 5-7, Pg. 7)). Additionally, prior to being permitted to perform work all drivers must meet FedEx's safety and training standards and go through FedEx's vetting and approval process, utilizing a third-party vendor designated by FedEx. (Ex. 4 – Tangi, at 76:17-77:10, 80:4-15, 123:24-124:22, 128:4-22; See also generally Exs. 5-10; Ex. 12; Ex. 24).

The final alternative definition, whether FedEx exercised "control over wages hours and working conditions", is likewise amenable to class treatment and can be determined by examining the same categories of FedEx policies, procedures, and contract agreements surrounding the linehaul work performed. Ultimately, any one of the three aspects—wages, hours, or working conditions—is sufficient to establish a determination of employment. See *Martinez*, 49 Cal. 4th at 59.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Further, an employment relation may be found even where an entity exercises such control indirectly. *Castaneda v. Ensign Grp., Inc.*, 229 Cal. App. 4th 1015, 1019 (2014) ("An entity that controls the business enterprise may be an employer even if it did not "directly hire, fire or supervise" the employees.")

### 4.   Common Failure To Reimburse Business Expenses

Labor Code Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties". Similarly, the "failure to reimburse expenses and improper deductions in violation of section 2802 is encompassed by Wage Order No. 9(8) and (9)." *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019), review dismissed, cause remanded sub nom. *Gonzales v. San Gabriel Transit*, 481 P.3d 1144 (Cal. 2021)

Here Plaintiffs' allegation that defendant failed to reimburse necessary business expenses is specifically centered upon the proposed Subclass A, comprised of the Class Members who were designated as the authorized officers of Defendant's TSPs. As discussed above, Plaintiff alleges that those individuals were "acting as a corporation"/ "business service provider" and thus, the "determination of employee or independent contractor status of the business services provider" will also be determinative of Defendant's duty to reimburse expenditures necessary to carry out the linehaul work performed. Cal. Lab. Code §§ 2775, et seq.  Because this theory of liability is rooted in Plaintiff's underlying claims of misclassification, all previous facts, evidence, and argument regarding the predominance of common misclassification issues is incorporated herein. Should Plaintiff prevail, common categories of necessary expenses will be recoverable. (Exs. 5-7, pg. 6; Ex. 8, pg. 14; Ex. 9, pg. 62 ("[TSP] agrees to bear all costs and expenses related to operation of the Equipment […] including, without limitation, […] all maintenance (including cleaning and washing), fuel, oil, tires, repairs, […] insurance coverage […] licenses, permits, vehicle inspection fees, vehicle registration renewal fees, base plates, and

all highway, bridge and ferry tolls."); See also Ex.4 - Tangi, at 222:25-223:16 ("Q. Are there any business costs that FedEx would provide reimbursement for to either the service providers or the drivers themselves? A. No, sir."); See also Ex. 23, (Evidencing expenses deducted by FedEx from payments for services rendered.)

### 5.   Common Failure To Provide Wage Statements

Labor Code Section 226(a) provides that each employer furnish their employees with accurate itemized wage statements, including detailed information as to hours worked, hourly/piece rates and wages earned, the name and address of the legal entity that is the employer, etc. The failure to supply accurate and itemized wage statements in violation of section 226 is also encompassed by Wage Order No. 9(7). *Gonzales, supra*, 40 Cal. App. 5th at 1157. These requirements extend independently to each entity that can be considered an employer. Cal. Lab. Code §226(a); See also Cal. Code Regs. tit. 8, § 11090 ("***Every   employer*** shall semimonthly or at the time of each payment of wages furnish each employee […] an itemized statement in writing")(Emphasis added.)

Here, FedEx has explicitly admitted that it did not issue wage statements to Plaintiff and the Class. (Ex. 4, at 216:13-217:1 ("FedEx doesn't issue wage statements to drivers or authorized officers, correct? A. No, sir.")). Likewise, FedEx has confirmed that "settlement statements" issued to its TSPs are not "wage statements" and do not meet the requirements of Labor Code § 226. *Id.*

It is anticipated that FedEx may argue that it has somehow fulfilled its legal obligations as an employer indirectly, via statements issued by the TSPs themselves; however, FedEx has forfeited any such argument by expressly disavowing its own status as an employer. (Ex. 4, at 59:1-8.)  To the extent that wage statements have been issued by TSPs, the requirements of  Labor Code Section 226 (a)(8) would still not be met, as FedEx's "name and address" would not be independently listed as an employer pursuant to FedEx's own written policies. See e.g. Ex. 9, at 6.2 ("[TSP] agrees that neither it nor any of its Personnel are to be treated as or considered to be

FXG's employees, directly, indirectly or jointly, for any purpose”);   See *Brinker Restaurant Corp. v. Superior Court* 53 Cal.4th 1004, 1033 (2012) (“The theory of liability – that [the employer] has a uniform policy, and that that policy […] violates the law – is by its nature a common question eminently suited for class treatment.”)

## 6.   Derivative Claims

The remaining cause of action under the UCL is wholly derivative. The UCL provides remedies for “any unlawful, unfair or fraudulent business act or practice …” (Bus. & Prof. Code § 17200.)   Thus, to the extent that any of the foregoing violations are found to be either “unlawful” or “unfair,” defendants will be subject to the remedies of the UCL, which “are cumulative to each other and to the remedies or penalties available under all other laws of this state.” (Id., §17205.)

## B.   Class Action Treatment Is Superior to Individual Actions.

Rule 23(b) (3) requires that “a class action is superior to other available methods for a fair and efficient adjudication of the controversy.” The Class Action device is superior to other methods of litigation “[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency” *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)

California has a strong "public policy that encourages the use of the class action device" in resolving employment disputes. *Sav-On Drug Stores, Inc. v. Superior Ct.*, 34 Cal. 4th 319, 340 (2004). The issues likely to be most vigorously contested in this dispute, as noted, are common ones. Absent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence … The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. It would be neither efficient nor fair to anyone … to force multiple trials to hear the same evidence and decide the same issues. This also risks the possibility of inconsistent judgments on those same issues, resulting in uncertainty as to the Parties’ legal rights and obligations. Each of these factors indicates that there are

substantial benefits in concentrating the litigation in this forum via a single comprehensive class action. *Sav-On Drug Stores, Inc.*, 34 Cal.4th at 326 ("A trial court ruling on a certification motion determines whether [...] the maintenance of a class action would be advantageous to the judicial process and to the litigants.")

Here, there is no indication that an overwhelming number of class members have an interest in individually controlling their own cases, and should any class members have such interest, they will have the opportunity to "opt out". *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) Ultimately, the class action device presents a substantial benefit to the class, avoiding the prohibitively high litigation costs an individual litigant may face along with any problems regarding lack of awareness amongst the class that their rights have been potentially violated. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985) ("an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.")

To date, there have been no cases deemed related to this action. To Plaintiff's knowledge, the only class action with some degree of potential overlap to this case is *Overpeck et al v. Fedex Corporation et al*, 4:18CV07553 (N.D. Cal.); however, the question of certification has not been determined there, and there are unique class members and claims in our instant case not present *Overpeck*.

Finally, this action does not pose any unique management problems. Rather, employment actions such as this, which allege common illegal policies and practices, are "eminently suited" for class treatment. *Brinker*, 53 Cal.4th at 1033; See also *Rai v. Santa Clara Valley Transp.Auth.*, 308 F.R.D. 245, 265 (N.D. Cal. 2015)("The classmembers' claims all stem from [defendant's]allegedly improper policies, practices, and procedures. It would be both 'redundant' and a 'wildly inefficient use of limited judicial resources for each operator to file an individual lawsuit alleging claims for their unpaid wages.")

/ / /

Respectfully submitted,

DATED:  August 30, 2021          **MARLIN & SALTZMAN, LLP**

By: ⎽⎽s/ Cody R. Kennedy⎽⎽⎽⎽⎽⎽⎽⎽
      Stanley D. Saltzman, Esq.
      Cody R. Kennedy, Esq.
      Marissa a. Mayhood, Esq.
      Attorneys for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

## **CERTIFICATE OF SERVICE**

I, Cody Kennedy, an attorney, certify that I caused the foregoing document to be served on all counsel of record in this action via the Court's CM/ECF system on August 30, 2021.

    s/  Cody R. Kennedy

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION